AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

In the Matter of the Extradition
of GAGNON, NICHOLAS

Case No. 6:19-mc-41 Orl-41 LRH

Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  11/19/15, 11/24/15, 5/24/16, 2/13/17  in the county of  Canada  in the _____ District of _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 3184 | Being a fugitive from Canada, which has sought his arrest with a view towards extradition on the charges of possession of property obtained by crime, robbery, conspiracy to commit robbery, using an imitation firearm in commission of an offense, and fourteen counts of failure to comply with conditions of undertaking or recognizance, all in violation of the Criminal Code of Canada, pursuant to the treaty of extradition between the United States and Canada, and Title 18 U.S.C., Section 3184. |

This criminal complaint is based on these facts:
See attached complaint

☑ Continued on the attached sheet.

_____
Complainant's signature

Sean P. Shecter, Assistant United States Attorney
Printed name and title

Sworn to before me and signed in my presence.

Date: 8/5/2019

_____
Judge's signature

City and state:  Orlando, Florida

Honorable Daniel C. Irick
Printed name and title

UN-SEALED

**STATE OF FLORIDA**  Case No. 6:19-mc-41-Orl-41LRH

**COUNTY OF ORANGE**

## COMPLAINT AFFIDAVIT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to Canada.

2. There is an extradition treaty in force between the United States and Canada, the Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* the Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990), *and* the Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively, the "Treaty").

3. Pursuant to the Treaty, the Government of Canada has submitted a formal request through diplomatic channels for the extradition of Nicholas Gagnon ("GAGNON").

4. According to the information provided by the Government of Canada, GAGNON is wanted in that country for the following offenses, in violation of the Criminal Code of Canada (the "CCC"):

   a. One count of Possession of Property Obtained by Crime, in violation of CCC §§ 354(1) and 355(b)(i);

   b. One count of Robbery, in violation of CCC § 344(1)(b);

   c. One count of Conspiracy to Commit Robbery, in violation of CCC § 465(1)(c);

   d. One count of Using Imitation of Firearm in Commission of an Offense, in violation of CCC § 85(2)(a) and 85(3);

   e. One count of Accessory After the Fact of a Robbery, in violation of CCC § 463(a);

   f. Fourteen counts of Failure to Comply with Condition of Undertaking or Recognizance,[1] in violation of CCC § 145(3)(a); and

   g. Two counts of Failure to Attend Court, in violation of CCC § 145(2)(a) and (b).

These offenses were committed within the jurisdiction of Canada, and four separate warrants were issued for GAGNON's arrest, as described below.[2]

   5.   Warrant 1: On July 20, 2017, Louis-Philippe Laplante, Justice of the Peace in the Province of Québec, issued a warrant for GAGNON's arrest for Possession of Property Obtained by Crime, based on the following facts:

---

[1] Under Canadian law, there are several ways by which an accused may be released while awaiting trial, including being subject to an undertaking and being subject to a recognizance. An undertaking is a general promise to respect certain conditions; a recognizance is a promise to pay the Crown a certain amount of money if certain conditions are violated, such as if the accused were to fail to show up to court when summoned. A single undertaking or recognizance can lead to many offenses, as the breach of each condition is an offense in itself.

[2] GAGNON was also charged with an additional count of Failure to Comply with Condition of Undertaking or Recognizance, in violation of CCC § 145(3)(a), in a separate warrant, relating to his alleged failure to comply with his curfew as required under the conditions of his release; however, the United States is not proceeding on that count at this time.

a.  On November 18, 2015, at 10:31 p.m., Sûreté du Québec, the provincial police force for the Canadian province of Québec, received a report of a robbery at the Chez Ma-Mi convenience store located at 961 Sainte-Henriette, in Saint-Lin-Laurentides, Canada. Officers were told that a masked man had threatened employee Tania Lamoureux with a pistol. The masked man had stolen money and packs of Loto-Québec lottery tickets from the registers.

b.  On November 20, 2015, Sûreté du Québec Officer Nicholas Lavoie ("Officer Lavoie") went to the convenience store to review the invoice for the purchase of the lottery tickets. The invoice indicated the serial numbers of the tickets that had been stolen on November 18, 2015. Officer Lavoie gave the serial numbers of the stolen lottery tickets to Loto-Québec, which identified some of the stolen serial numbers as having been paid out in different stores in the province of Québec between November 19 and 20, 2015.

c.  On November 19, 2015, an individual exchanged four of the stolen tickets at the Marche Richelieu store in Lanoraie, Québec. The next day, an individual exchanged thirty stolen tickets at the Pierret grocery store and the Relais convenience store in Val-d'Or, Québec. After reviewing surveillance footage obtained from these three stores, Investigative Sergeant Pierre-Luc Castonguay ("Sergeant Castonguay") with Sûreté du Québec identified GAGNON as the individual who had exchanged the stolen lottery tickets.

3

6. <u>Warrant 2</u>: On February 13, 2017, Judge Marc Ouimette, of the Court of Québec, issued a warrant for Gagnon's arrest for Robbery, Conspiracy to Commit Robbery, Using Imitation of Firearm in Commission of an Offense, and Accessory After the Fact of a Robbery, based on the following facts:

    a. On November 24, 2015 (less than a week after the Chez Ma-Mi robbery), at 8:27 p.m., Veronic Thouin ("Thouin"), a waitress at Bar aux Sports in Val-d'Or called the police to report that the bar had been robbed. Thouin told police that two individuals had entered the bar through the back door and made their way to the front counter. According to Thouin, one of the individuals pointed a black revolver at her, shouting "[t]his is a holdup; don't move, and nothing will happen to you," while the other man went behind the front counter and opened a drawer where he found a cash box containing approximately $15,000 CAD. The bills in the cash box were in bundles, held together by elastic bands. The men took the cash box and fled out the back door.

    b. Guy-Roger Thompson ("Thompson") reported that he and his spouse were returning home when they noticed a white/grey Cadillac stopped in the middle of the alleyway behind their residence with its engine running. According to Thompson, a white man who appeared to be in his twenties was in the driver's seat of the Cadillac. Thompson then observed two men, whose physical features were obstructed by their clothing, running toward the car, one of whom was carrying a dark backpack. The two men entered the Cadillac, and it sped off. Thompson

4

identified the license plate number of the Cadillac as W38 JBE. He called the police at 8:46 p.m. to report what he had observed. According to information maintained in a Canadian police database, the license plate identified by Thompson was associated with a white Cadillac registered to GAGNON.

  c. Shortly thereafter, at approximately 9:00 p.m. that same day, police set up a road block at the main thoroughfares connecting Val-d'Or to other cities, with the goal of intercepting GAGNON's Cadillac. At 9:24 p.m., GAGNON's Cadillac arrived at the road block. The driver identified himself as GAGNON, and his passenger was identified as Francis Legault ("Legault"). Officers notified both individuals that they were being detained for investigation. In a post-detention search, officers discovered two bundles of money in Lagault's back pocket. The cash bundles, totaling $2,000 CAD, were held together by elastic bands. Officers placed GAGNON and Legault under arrest. After transporting GAGNON and Legault to the police station, officers discovered another $1,745 CAD, also held together by elastic bands, hidden in Legault's pants and socks. On the following day, November 25, 2015, officers searched GAGNON's Cadillac and found, among other items, $480 CAD rolled up and bound with an elastic band.

  d. Also on November 25, 2015, police received surveillance videos from Bar aux Sports, which showed two men arriving at the bar in the minutes just prior to the robbery, one of whom spoke to the waitress while the other looked around and played a video poker machine. Sergeant Castonguay identified the man

5

talking to the waitress as GAGNON, while the second man was identified as Patrice Gaudreault-Morin ("Gaudreault-Morin").

 e. Police executed a search warrant at Gaudreault-Morin's residence, where they discovered a black airgun (imitation 9mm handgun), a black backpack containing the small metal cash box from Bar aux Sports, and clothing corresponding to that worn by the robbers, as seen on footage from the surveillance cameras.

 f. On November 25, 2015, GAGNON provided a written statement admitting he had gone to Bar aux Sports on November 24, 2015, within the hour preceding the robbery.

7. <u>Warrant 3</u>: On June 16, 2016, Marie-Claude Bélanger, Justice of the Peace in the Province of Quebec, issued a warrant for GAGNON's arrest on two counts of Failure to Comply with Condition of Undertaking or Recognizance, based on the following facts:

 a. Following his arrest for the Bar aux Sports robbery, GAGNON remained detained through November 30, 2015, at which time he was released on bail after signing an undertaking that specified certain terms of his release. Subsequently, on May 9, 2016, GAGNON also signed a recognizance providing additional terms. The terms of both the undertaking and the recognizance required GAGNON to abstain from possessing or using drugs or narcotics except as medically prescribed.

6

   b. On May 24, 2016, Jessica and Joanie Poissant-Ricard ("the Poissant-Ricards"), went to a beach on Lac des Soeurs in Val-d'Or, where they noticed a group of approximately ten individuals using drugs. One man lost consciousness and fell into the water. After no one in the group reacted or provided assistance, the Poissant-Ricards retrieved the unconscious man from the water and drove him to their home in the city, at which time they noticed that his health was deteriorating and called emergency services to report the incident.

   c. Sûreté du Québec Officer Patrice Leblanc-Bioldeau and other officers who responded to the call recognized GAGNON from prior interactions with him. The officers brought GAGNON to a hospital in Val-d'Or, where he was admitted to the intensive care unit for a severe overdose, and where he tested positive for methamphetamines, cocaine, THC, and benzodiazepines, thereby demonstrating that he had violated the relevant terms of the undertaking and recognizance.

  8. <u>Warrant 4</u>: On March 14, 2017, Justice of the Peace Jacques Barbés, in the Province of Québec, issued a warrant for GAGNON's arrest on twelve counts of Failure to Comply with Condition of Undertaking or Recognizance, based on the following facts:

   a. In addition to the November 30, 2015, undertaking and the May 9, 2016, recognizance, GAGNON also signed another undertaking on July 8, 2016, providing various conditions of his release.

   b. On February 13, 2017, GAGNON failed to appear as summoned

for trial in Amos, Québec. U.S. authorities determined that GAGNON had left Canada and arrived in the United States the weekend preceding his trial date. In so doing, GAGNON committed the following violations of the conditions of his release:

    i. One violation of the requirement to appear in court on February 13, 2017, at the courthouse in Amos, pursuant to CCC § 145(2)(a);

    ii. One violation of the requirement to appear in court on February 13, 2017, at the courthouse in Amos, having already appeared before the court on January 23, 2017, pursuant to CCC § 145(2)(b).

    iii. Two violations of the requirement to keep the peace, be of good behavior, and appear in court when required, pursuant to CCC § 145(3)(a);

    iv. Two violations of the requirement to live at 1860, boulevard Forest, apt. 5, in Val-d'Or, pursuant to CCC § 145(3)(a);

    v. One violation of the requirement to be at 1860, boulevard Forest, apt. 5, in Val-d'Or, between 9:00 p.m. and 6:00 a.m., except for the purposes of legitimate and remunerated work, pursuant to CCC § 145(3)(a);

      vi.    One violation of the requirement to be at 1860, boulevard Forest, apt. 5, in Val-d'Or, between 10:00 pm and 6:00 am, except for the purposes of legitimate and remunerated work, pursuant to CCC § 145(3)(a);

      vii.    Two violations of the requirement not to change address without prior authorization from the court, pursuant to CCC § 145(3)(a);

      viii.    Two violations of the requirement not to leave the judicial district of Abitibi-Temiscamingue, pursuant to CCC § 145(3)(a);

      ix.    One violation of the requirement to go to the Sûreté du Québec station in Val-d'Or once a week to sign a register, between 9:00 a.m. and 4:00 p.m. on Fridays, starting on May 13, 2016, pursuant to CCC § 145(3)(a); and

      x.    One violation of the requirement to go to the Sûreté du Québec station in Val-d'Or once a week to sign a register, between 9:00 a.m. and 4:00 p.m. on Fridays, starting on July 15, 2016, pursuant to CCC § 145(3)(a).

9.    GAGNON may be found within the jurisdiction of this Court at 3926 Brown Ct., Cocoa, Florida 32926.

10.    Katherine C. Fennell, an Attorney-Adviser in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of

Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is requested are provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Canada, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

11. The declaration from the U.S. Department of State, with its attachments, including a copy of the diplomatic note from Canada; a copy of the Treaty; and the certified documents submitted in support of the request (marked collectively as Government's Exhibit 1), are filed with this complaint and incorporated by reference herein.

12. GAGNON likely would flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Canada, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
Sean P. Shecter
Assistant United States Attorney

Sworn to before me and subscribed
in my presence this 5 day of August,
2019.

_____
The Honorable Daniel C. Irick
United States Magistrate Judge